UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

                                      Case No.  13-20600

FARID FATA, M.D.,

                                      Judge Paul D. Borman

      Defendant.

_____/

**AMENDED OPINION AND ORDER**
**DETAINING DEFENDANT FARID FATA PENDING TRIAL**

**I.   BACKGROUND**

    **A. Charges**.

On October 2, 2013, this Court held a detention/release hearing pursuant to Title 18 U.S.C. § 3142(f).  The operative charging document was a First Superseding Indictment returned on September 18, 2013, charging:

> Counts 1 - 12 (up to 10 years incarceration on each Count).
>
> Violations of 18 U.S.C. § 1347 (Health Care Fraud).  This charged Defendant with submitting false and fraudulent claims to Medicare, Blue Cross Blue Shield of Michigan (BCBSM), Health Alliance Plan (HAP), and Aetna Insurance for services that were not medically necessary during the period of August 2007 through August 13, 2013.

Count 13 (up to 5 years incarceration)

Violation of Title 18 U.S.C. § 371 (Conspiracy). This charged Defendant with conspiracy to pay and receive kickbacks from October 10, 2010 through August 2013 in violation of 42 U.S.C. § 1370a-7b(b)(2)(A) and § 1320a-7b(b)(1)(A).

Count 14 (up to 10 years incarceration)

Violation of Title 18 U.S.C. § 1325(a). (Unlawful Procurement of Naturalization). This charged Defendant with knowingly procuring his naturalization as a United States citizen contrary to law by knowingly making false statements in 2008 and 2009.

Also included in the Indictment was a count of Criminal Forfeiture under 18 U.S.C. § 982.

Prior to that First Superseding Indictment, Defendant had initially been charged on August 6, 2013 in a criminal Complaint with a violation of Title 18 U.S.C. § 1347 (Health Care Fraud); and then, on August 14, 2013, charged in a single count indictment charging a violation of 18 U.S.C. § 1347 (Health Care Fraud), and a charge of Criminal Forfeiture under 18 U.S.C. § 982.

B. **Release/Detention History**.

(1)     August 6, 8, 9 and 13, 2013.

On August 6, 2013, Magistrate Judge David Grand held a hearing/initial appearance on the Complaint, and continued it to August 8, 2013. At that hearing, he ordered that Defendant be released on a $170,000 cash bond, but continued detention to permit the government to appeal to then presiding U.S. District Judge David Lawson. Magistrate Judge

Grand also granted the government's request for a *Nebbia* hearing prior to the Court accepting the bond to assure that the money posted was not from illicit proceeds.

On August 8, 2013, Judge Lawson commenced a brief hearing, did not change the bond, but ordered that the parties appear before presiding U.S. District Judge Sean Cox who would be presiding on the next day, August 9, 2013, to complete the appeal hearing.

On August 9, 2013, Judge Cox held a brief hearing and ordered the parties to file briefs on their respective positions and return to his courtroom for a hearing on August 13, 2013.

On August 13, 2013, Judge Cox held a hearing, heard argument, and thereafter issued an order setting a cash bond of $9,000,000, and ordering a *Nebbia* hearing prior to the Court accepting money to post the bail. On August 14, 2013, Defendant was indicted, and his case was assigned to this Court.

(2)     The October 2, 2013 Hearing.

On September 10, 2013, Defendant filed a Motion to Amend Conditions of Release. This Court set a hearing date for October 2, 2013. On September 11, 2013, this Court issued an Amended Notice regarding the motion hearing, stating that the hearing would involve 18 U.S.C. § 3142. On September 30, 2013, this Court issued an Order reaffirming its amended notice of the upcoming hearing – that it would consider all of the options contained in 18 U.S.C. § 3142. At the instant hearing, defense counsel acknowledged that the areas of review at the hearing were detention or release under 18 U.S.C. § 3142. (Oct. 2, 2013 Transcript, C. Andreoff, p. 27 (hereinafter Oct. 2, 2013 Tr.)).

3

Defendant has requested a $500,000 cash/surety bond with the following conditions:

1. Surrendering passports of his wife and three children;

2. Defendant signing a waiver of extradition;

3. Defendant and his family resigning as trustees of his charitable foundations;

4. The Court issuing a restraining order on Defendant's assets, but leaving open for his wife to have a checking account to pay monthly bills – subsequently altered to permit government to approve outgoing checks;

5. Defendant identifying the source of funds used for bail at a *Nebbia* hearing;

6. Defendant agreeing to continue his 24-hour home lockdown; and

7. Defendant will not practice medicine, or write checks.

(Oct. 2, 2013 Tr., 10-15, C. Andreoff).

The government requested detention. (Oct 2, 2013 Tr. 37).

The Court concludes, for the reasons stated below, that Defendant's proposed conditions do not reasonably assure Defendant Dr. Farid Fata's appearance at trial.

The Court has concluded, after considering arguments and exhibits at the October 2, 2013 hearing that Defendant Dr. Farid Fata be detained pending trial because there was established by a preponderance of the evidence that there is a serious risk of flight, and that no condition or combination of conditions will reasonably assure the appearance of the Defendant.

As to the Section 3142(g) factors to be considered in reaching this conclusion:

(1) The Court concludes that the nature and circumstances of the offenses charged are very serious: 12 counts of health care fraud over period of six years, carrying a maximum penalty of 10 years incarceration on each count; a conspiracy count charging kickbacks over three years, carrying a maximum penalty of five years incarceration; and a single count charging unlawful procurement of naturalization. The charges are serious, and the potential penalties are double digit years.

(2) The Court concludes that the weight of the evidence, as set forth at the hearing, appears to be strong based upon the specific allegations of conduct backing up the allegations in the Indictment. The Assistant United States Attorney (AUSA) not only stated that the Defendant was guilty of extensive fraud and lies, but also stated specifically that "[W]e have witnesses to every level of those lies." (Oct. 2, 2013 Tr. 34). The AUSA then proceeded to elaborate with specifics.

The AUSA stated that its case would call employee witnesses who were directed by Defendant to lie to patients to maximize his fees; patient-witnesses "who caught him in those lies"; "employees who observed Dr. Fata telling lies, lying about what the patient's prognosis was;" "second opinion doctors for these patients who confirmed that what the patients [sic] told was a lie. Those patients didn't have the condition, they didn't have the cancer or they

5

were grossly overtreated;" and "Experts independent from the second opinion doctors for the patients." (Oct. 2, 2013 Tr. 39).

The AUSA also stated that its proofs would also include billing records and patient files that sometimes "are not consistent." What was told to the insurance company to justify the payment is not consistent with what was put in the patient file." (Oct. 2, 2013 Tr. 40).

The AUSA also stated that it has evidence of a cover-up, where "Dr. Fata frequently would not permit the patients to get their full file or the file itself," directing "staff at times to remove portions of the file, and at times he tried to convince patients not to take the file or to go to a second opinion doctor. The motive, your Honor, was money. That's what fraud is about." (*id.* at 40).

The presumption of innocence applies at this stage, but it does not eviscerate the specific detailed statements made by the AUSA when the Court is required to determine the issue of pretrial detention or release. Indeed, counsel for Defendant described the AUSA'S statements as a "litany of the strong evidence that faces Dr. Fata," and concluded "that we cannot address at this time because we don't have access to those medical records." (Oct 2, 2013 Tr. 54). Nevertheless, the Court was required at this proceeding to hear the argument and rule under 18 U.S.C. § 3142. The Court concludes that, at this stage of the proceeding, the weight of the evidence against Defendant Fata is both specific and strong.

The history and characteristics of Defendant Fata evidences no criminal history. His immediate family ties (wife and children) are to this district, but he also has significant ties to the country of Lebanon where he was born, where his and his wife's parents live, and to which he recently traveled (in 2013) and purchased a home now occupied by his parents. His

6

employment history in this district is long, and highly remunerative. The fact that the Defendant was so financially successful supports his ability to flee to Lebanon to escape prosecution, a country that does not have an extradition treaty with the United States. The serious charges, and the government's extensive extrapolation of its case provides a significant motive to flee.

Dr. Fata's financial resources are significant through his and his wife's individual resources, and through corporations, trusts, and charities over which he has had control. Government Exhibits A, B, and C elaborately specify his wealth, and his maze of financial entities. Although most of these assets have been seized/frozen/liened, his wife, who was chief financial officer of his business ventures, has access to a sufficient sum of money to permit his flight. As the AUSA noted, "Dr. Fata's wife was placed in control of hundreds of thousands of dollars that the government has not seized and continued to write checks on that amount." (Oct. 2, 2013 Tr. 47-48), and "[I]t does not take much money to finance a flight." (*Id.* at 36).

The Court heard argument from the AUSA that some defendants on release, facing significant criminal penalties, have cut off their electronic monitoring devices and fled the country. (*Id*. at 47). The Court's Pretrial Services Department has recommended detention, evidencing that Defendant's presence at trial cannot be guaranteed by conditions, including home detention on a tether.

The Court also notes that the charge that could result in Defendant's denaturalization also provides a motive to flee.

Accordingly, the Court, having heard argument, and the government's presentation of

7

the case, makes findings of fact that warrant its conclusion by a preponderance of the evidence that Defendant Dr. Farid Fata presents a serious risk of flight, has a motive and means to flee, and that no condition or combination of conditions of release can reasonably assure his appearance at trial.

Finally, the Court recognizes that Defendant's case requires special accommodation to permit the incarcerated Defendant access to counsel, experts, and documents. To this end, present at the October 2, 2013 hearing, were the Supervising Deputy U.S. Marshal Louis Stock, and Mr. James Dunn of the Federal Bureau of Prisons, who were advised of the special needs in this case and were directed by the Court to meet with defense counsel and Defendant after the hearing to facilitate his preparation with defense counsel for trial.

The Court noted, on the record, that the Wayne County Dickerson facility, located closer to his counsel, provides better accommodation for bringing in evidence, and longer visiting hours. Defendant has chosen to remain at the Dickerson facility. (This is not the Wayne County Jail facility.)

This Court stated that it would "make every effort and will stand ready every day of the week to work with defense counsel if there are problems." (Oct. 2, 2013 Tr. 61). This commitment continues. *See* 18 U.S.C. § 3142(i)(3).

Accordingly, Defendant is ordered detained pending trial.

**SO ORDERED.**

                                              s/Paul D. Borman
                                              PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

Dated:  October 11, 2013

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 11, 2013.

                                              s/Deborah Tofil
                                              Case Manager