UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

v.

FARID FATA,

          Defendant.
_____/

Case No. 13-cr-20600

Paul D. Borman
United States District Judge

**OPINION AND ORDER DENYING MOTION FOR REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A) (ECF NO. 265)**

This matter is before the Court on Defendant Farid Fata's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Fata was charged in a fourth superseding indictment on January 15, 2014 with: nineteen counts of health care fraud (18 U.S.C. § 1347); one count of conspiracy to pay and receive kickbacks (18 U.S.C. § 371); one count of unlawful procurement of naturalization (18 U.S.C. § 1425(a)); and two counts of money laundering (18 U.S.C. § 1956(a)(1)(A)(i)). (ECF No. 66.)

Fata was an oncologist/hematologist, and most of the charges against him relate to his knowing administration of chemotherapy and other unnecessary cancer-fighting treatments and diagnostic testing, such as PET scans, to hundreds of patients/victims who either did not have cancer or did not need the cancer treatments,

and then submitting false and fraudulent claims to Medicare or medical insurance companies for years of such medically unnecessary services. (*Id.*) Fata was sentenced on July 10, 2015 to a total of 45 years imprisonment after pleading guilty to thirteen counts of healthcare fraud (Counts 3-6 and 9-17), one count of conspiracy to pay and receive kickbacks (Count 20), and two counts of money laundering (Counts 22 and 23). (ECF No. 158, Judgment; ECF No. 243, Amended Judgment.)

In the present motion, Fata seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) due to his age, health and the risks presented by COVID-19. (ECF No. 265.) For the reasons explained below, the Court DENIES Defendant Farid Fata's Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A).

## I. BACKGROUND

Defendant Fata was a doctor who intentionally misdiagnosed hundreds of his patients with cancer and other illnesses they did not have, and then administered unnecessary and invasive treatments and tests, including aggressive chemotherapy, unnecessary "supportive" treatments and intravenous iron, and unnecessary PET scans involving the injection of radioactive materials. Fata pleaded guilty to sixteen counts – thirteen counts of health care fraud, one count of conspiracy to pay and receive kickbacks, and two counts of promotional money laundering. (ECF No. 111.) He did not plead pursuant to a Fed. R. Crim. P. Rule 11 plea agreement.

Fata's Sentencing Guideline factors in the presentence report were: Offense Level 43, Criminal History Category I, creating an advisory Guideline range of 2100 months or 175 years' incarceration. The Government requested a sentence of 175 years; Fata's counsel requested a sentence of 25 years. Following extensive sentencing proceedings, the Court sentenced Fata to 45 years in prison, significantly below the Guideline range and the Government's request. (ECF No. 158, Judgment; ECF No. 243, Amended Judgment.) Fata began serving his 45-year sentence with the Bureau of Prisons ("BOP") on August 28, 2015, and he is currently incarcerated at FCI-Williamsburg in South Carolina.

On May 22, 2018, Fata filed a 28 U.S.C. § 2255 motion to vacate, set aside or correct sentence, claiming that his counsel (Christopher Andreoff) "was ineffective for advising Fata to plead guilty." (ECF No. 212.) Following an evidentiary hearing in July 2019, Magistrate Judge David R. Grand issued a Report and Recommendation ("R&R") on February 7, 2020, denying Fata's § 2255 motion, finding that it "lack[ed] merit both legally and factually." (ECF No. 258). Fata filed objections to the R&R (ECF No. 261) and the Government filed a response (ECF No. 262). On May 27, 2020, the Court issued an Opinion and Order rejecting Fata's objections, adopting Magistrate Judge Grand's R&R, denying Fata's § 2255 motion, and denying a certificate of appealability. (ECF No. 276.)

Fata is fifty-five years old and alleges that he suffers from type-2 diabetes with diabetic neuropathy and vision complications; that he is immune-compromised with persistent low white blood cell count and low neutrophil count; that he suffers from gastro-intestinal bleeding and esophageal acid reflux with a history of H. Pylori gastritis; and that he has mild cognitive impairment/early dementia. (ECF No. 265 at p. 7, PgID 3943.)

On November 22, 2019, Fata wrote to the Warden at FCI-Williamsburg, South Carolina, seeking compassionate release or reduction in his sentence in light of his health conditions. (ECF No. 265-1, PgID 3951-54.) The Warden responded on February 20, 2020, denying the request. (ECF No. 265-2, PgID 3956.)

On May 5, 2020, Fata filed this motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), citing his age, medical conditions, and the COVID-19 pandemic. (ECF No. 265.) The Government filed a response on May 19, 2020 (ECF No. 272), and Fata filed a reply brief on June 2, 2020 (ECF No. 278.)

The Government argued in its response, in part, that Fata did not exhaust his administrative remedies because he had only requested compassionate release in 2019 for non-COVID-19 related reasons. (ECF No. 265 at pp. 14-18, PgID 4022-26.) The Warden had denied his request. This Court entered an Order on June 11, 2020, rejecting the Government's argument, declining to strike Fata's Motion as premature, finding that his 2019 request to the Warden satisfied the exhaustion

requirement contained in 18 U.S.C. § 3582(c)(1)(A), and continuing jurisdiction over Fata's Motion for Reduction of Sentence. (ECF No. 283.)

## II. LEGAL STANDARD

Ordinarily, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). A district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Specifically, a district court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). This section, as amended by the First Step Act of 2018, allows for judicial modification of an imposed term of imprisonment when three criteria have been met: (1) the defendant has first exhausted all administrative remedies with the BOP or at least allowed the BOP 30 days to act on his request before seeking compassionate release on his own motion; (2) extraordinary and compelling reasons warrant such a reduction; and (3) the reduction is consistent with the applicable policy statements issued by the Sentencing Commission (U.S. Sentencing Guidelines ("USSG") Manual § 1B1.13), and the Court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a).

The Sentencing Commission Commentary to § 1B1.13 enumerates a limited number of "extraordinary and compelling" requirements that a defendant must satisfy to justify a reduction of sentence, including the "Medical Condition of the

5

Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." USSG § 1B1.13 cmt. n.1(A)-(D). Further, the defendant must "not [be] a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). Thus, Guideline 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need.

Application Note 4 to Guideline 1B1.13 states in pertinent part:

> The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of the reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement….

USSG § 1B1.13 cmt. n.4.

Title 18 U.S.C. § 3553(a) provides that "[a] court, in determining the particular sentence to be imposed, shall consider[:]"

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed –
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established …
>
> (5) any pertinent policy statement …
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

"[D]istrict courts have 'broad discretion to determine what sentence will serve § 3553(a)'s statutory objectives.'" *United States v. Kinkaid*, 805 F. App'x 394, 394 (6th Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009)) (affirming district court's denial of compassionate release after consideration of § 3553(a)'s factors).

### III. ANALYSIS

The Court must consider whether Fata meets the statutorily-mandated criteria for compassionate release set forth in 18 U.S.C. § 3582(c)(1)(A).

#### A. Extraordinary and Compelling Reasons

There must be an extraordinary and compelling reason for the Court to modify Fata's sentence under 18 U.S.C. § 3582(c)(1)(A)(i). Pursuant to USSG § 1B1.13, compassionate release is limited to those defendants who are most in need. That

policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and (4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the BOP has set forth in Program Statement 5050.50. USSG § 1B1.13 cmt. n.1. The defendant bears the burden of proving that "extraordinary and compelling reasons" exist to justify release under the statute. *See United States v. Rodriguez*, 896 F.2d 1031, 1033 (6th Cir. 1990) (concluding that the burden of proving facts that could decrease a potential sentence fall upon the defendant); *see also United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant the decrease.").

Fata relies on his age and medical condition as well as "the recent outbreak of COVID-19 within the BOP institutions" as constituting extraordinary and compelling reasons justifying modification of his sentence. (ECF No. 265 at pp. 7-8, PgID 3943-44.) He contends that "[w]ith [his] medical conditions and age, contracting COVID-19 could very well prove to be fatal." (*Id.*) The Government argues that Fata's medical condition and age do not warrant the relief Fata seeks, and that Fata's speculation that his place of incarceration places him at risk for COVID-19 is not enough to satisfy § 1B1.13's criteria. (ECF No. 272 at pp. 19-27, PgID 4027-35.) The Court notes that as of July 9, 2020, one inmate and two staff

8

members at that FCI have tested positive for COVID-19. See https://www.bop.gov/coronavirus/index.jsp.

First, Fata is not eligible for release based on his age. The Commentary and application notes for USSG § 1B1.13 provides that the "age" of the defendant only comes into play if the defendant "is at least 65 years old," in addition to other factors including that he is experiencing "a serious deterioration in physical and mental health because of the aging process" and he "has served at least 10 years or 75 percent of his or her term of imprisonment." USSG § 1B1.13 cmt. n.1(B). Fata is 55 years old, well under the 65-year-old criteria in the Guidelines, and does not meet the other conditions as well.

Second, the Court has considered the medical records submitted to the Court and concludes that Fata is not entitled to release based on his medical condition. The medical condition of a defendant serves as an "extraordinary and compelling" reason for compassionate release only if the condition is a "terminal illness" with an end of life trajectory, or the condition "substantially diminishes the ability of the defendant to provide self-care" and the defendant "is not expected to recover" from the condition. USSG § 1B1.13 cmt. n.1(A).

In his motion, Fata summarily contends that he:

> suffers from the following comorbidities: Type-2 diabetes with diabetic neuropathy and vision complications; immune-compromised with persistent low white blood cell count and low neutrophil count; gastro-intestinal bleeding and esophageal acid reflux with a history of H.

9

> Pylori gastritis; and mild cognitive impairment/early dementia. Fata is currently prescribed and taking duloxetine, metformin, atorvastatin and omeprazole.

(ECF No. 265 at p. 7, PgID 3943, citing Ex. C, ECF No. 266 (medical records filed under seal).) Fata has not established his qualification to be categorized as suffering from a terminal illness or a substantially diminished ability to provide self-care. Certainly he has not established an inability to recover from his conditions, as required by USSG § 1B1.13.

The Government's response in opposition asserts that "there is no evidence in the [BOP] medical records … that [Fata's] health conditions rise to the level of a terminal illness or a condition that 'substantially diminishes' his ability to provide self-care within his correctional facility." (ECF No. 272 at p. 20, PgID 4028.) The Government contends that Fata's prison medical records, attached as sealed exhibits to its Response, establish that each of Fata's complained-of ailments "are either exaggerated, mild, or managed." (ECF No. 272 at pp. 20-22, PgID 4028-30, citing Fata's BOP medical records at Exhibits 1-5 (filed under seal).) The Court attaches the Government's single-spaced discussion that quotes in part from Fata's medical records, as a sealed exhibit to this Opinion. (Attachment No. 1, filed under seal.)

The Government notes that the Warden at FCI-Williamsburg similarly wrote in denying Fata's request for release that:

> …medical staff have determined that you do not meet the criteria under Debilitated Medical Condition. The medical evaluation concluded that

> you are not capable of only limited self-care nor confined to a bed or chair for more than 50 percent of waking hours.
>
> The evaluation concluded that all of your conditions are well-controlled through medication. Additionally, you are capable of performing activities of daily living (ADL) without assistance and are capable of carrying out self-care.

(ECF No. 272 at pp. 22-23, PgID 4030-31, citing ECF 265-2 (Response to Inmate Request to Staff).)

The Court has reviewed all of the medical record evidence provided by Fata and the Government, and concludes that Fata's medical condition does not constitute an "extraordinary and compelling" reason for compassionate release because none of Plaintiff's conditions the rise to the level of a "terminal illness" or a condition that "substantially diminishes" his ability to provide self-care within his correctional facility. While Fata's Type-2 Diabetes is well-documented, his medical records also reflect that his condition is generally "well controlled" with medication and diet, and without insulin. (*See, e.g.,* ECF No. 266, PgID 3968, 3975, 3980-81, 3983-85, 3987-88.; ECF No. 273-1 at PgID 4090, 4093, 4143, 4159; ECF No. 273-5 (all filed under seal).)

The records document Fata's complaints of foot pain, "decreased sensation," "burning," or neuropathy associated with his diabetes diagnosis, but he reported that medication is generally effective, "of benefit," "helpful," and "a Godsend." (ECF No. 266 at PgID 3969, 3975, 3988, 3990, 3994; ECF No. 273-1 at PgID 4048, 4074,

4084 (all filed under seal).) Further, on examination, Fata was deemed "not qualified for diabetic shoe[s] because he is not on insulin" and his "sugar is well controlled," and he was instead issued "alternate institutional shoes." (ECF No. 273-1 at PgID 4084, 4168-69; ECF No. 273-2 PgID 4214, 4222, 4258 (all filed under seal).)

Contrary to Fata's assertion of "vision complications," the medical records consistently note a finding of "no retinopathy" and that his eyes were within "normal limits." (ECF No. 266 at PgID 3971, 3973-74; ECF No. 273-1 at PgID 4044, 4129-31; ECF No. 273-2 at PgID 4212, 4219-21 (all filed under seal).)

While the records do contain periodic testing showing low white blood cell and/or low neutrophil counts, there is no finding, notation or other indication in the medical record that Plaintiff is "immune-compromised" other than by his diabetes. (ECF No. 266 at PgID 3979-80, 3982, 3986-87, 4000; ECF No. 273-1 at PgID 4164 (all filed under seal).)

The medical records document testing showing blood in his stool in 2019, but also that Fata complained of constipation and "reports [he was] told [he] has internal hemorrhoids," and the records conclude that "blood in stool most likely internal hemorrhoid considering NL colonoscopy in 2016," and a follow-up colonoscopy was "disapproved." (ECF No. 266, PgID 3978, 3988; ECF No. 273-1 at PgID 4063, 4088, 4121; ECF Nos. 273-3 and 273-4 (all filed under seal).) The records also show a past diagnosis of GERD/reflux, that Fata was prescribed omeprazole and he

reported that it helps. (ECF No. 266 at PgID 3975, 3988; ECF No. 273-2 at PgID 4216 (all filed under seal).)

Finally, while Fata complained in November 2019 of "progressively noticing that [he] forget[s] to remember words in the thread of [his] thought" and forgets where he places his ID, a Mini-Mental State Exam administered that same month showed Fata had "mild cognitive impairment" but that his physical examination was otherwise "normal and no disturbances of consciousness [were] noted." (ECF No. 266 at PgID 3994; ECF No. 273-1 at PgID 4175, 4182 (all filed under seal).) There is no finding of "early dementia" or other similar finding in the medical records.

A review of Fata's medical records thus indicates an overall positive outlook, and his medical condition has been described as "doing fairly well," "compliant with all meds, diet & exercise, as much as possible," and "appears well." (*See, e.g.*, ECF No. 266 at PgID 3990; ECF No. 273-1 at PgID 4074 (all filed under seal).) He is receiving medical care for all of his conditions, and his medical condition simply does not constitute an "extraordinary and compelling" reason justifying compassionate release under 18 U.S.C. § 3582(c)(1)(A).

In his reply brief, Fata argues that he is entitled to relief for "other reasons" under USSG § 1B1.13, cmt. n.1(D), which states that an extraordinary and compelling reason exists if: "*As determined by the Director of Bureau of Prisons*, there exists in the defendant's case an extraordinary and compelling reason other

13

than, or in combination with, the reasons described in subdivisions (A) through (C)." (emphasis added). Apart from the COVID-19 pandemic, Fata does not adequately explain what those "other reasons" are. (ECF No. 278 at pp. 5-6, PgID 4419-20.) He asserts that the Center for Disease Control lists diabetes as a condition that creates a risk of serious illness from COVID-19, that "numerous courts across the country have found such instances of increased risk constitutes 'extraordinary and compelling' circumstances[,]" and that Michigan has "seen a steady decline" in COVID-19 cases since April 2020, while South Carolina has "rapidly increased over the past month." (*Id.*) The single case Fata cites in his reply brief in support of his argument, *United States v. Diep Thi Vo*, No. 15-CR-00310-BLF-2, 2020 WL 2300101 (N.D. Cal. May 7, 2020), is distinguishable from the facts of this case. In *Diep Thi Vo*, the court granted defendant's motion for compassionate release based on her serious medical condition (a verified history of hyperlipidemia, hypertension, low vision in both eyes, and osteoarthritis in both knees necessitating the use of a rolling walker for stability), her age (74 years old), the COVID-19 pandemic, and the short time remaining on her sentence (scheduled for release on June 26, 2021). *See id.* at *3-4. Conversely, Fata's age (55) and medical conditions do not satisfy

the requirements of § 1B1.13, and he has only served five years of his 45 year sentence.[1]

The outbreak of COVID-19 does not change the Court's analysis. As the Third Circuit explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Rather, "compassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry … made in the 'unique circumstances' and 'context' of each individual defendant." *See United States v. Brady*, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020). In *Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020), the Sixth Circuit noted that the actions of the BOP to reduce the COVID-19 risk demonstrates the opposite of the disregard of a serious health risk. The Sixth Circuit further noted that "the BOP has not shown … deliberate indifference." *Id.* at 843.

---

[1] The out-of-state cases listed at pages 8-11 in Fata's motion are similarly factually distinguishable. *See, e.g, United States v. Colvin*, No. 3:19-cr-179 (JBA), 2020 WL 1613943 (D. Conn. Apr. 2, 2020) (defendant had only 11 days left on a 30-day sentence); *United States v. Jepsen*, No. 3:19-cr-00073 (VLB), 2020 WL 1640232 (D. Conn. Apr. 1, 2020) (defendant had less than 8 weeks left to serve on his sentence and the government consented to his release).

The BOP has been working diligently to implement precautionary measures reducing the risk from COVID-19 to Fata and other inmates. As of July 8, 2020, one inmate and two staff members at that FCI have tested positive for COVID-19. See https://www.bop.gov/coronavirus/index.jsp. Thus, FCI-Williamsburg has appropriately managed the pandemic. *See United States v. Davis*, No. 18-20211, 2020 WL 2764585 (E.D. Mich. May 28, 2020) (denying release to inmate despite three positive COVID-19 cases among the staff at the detention facility housing defendant); *United States v Austin*, No. 15-20609, 2020 WL 2507622 (E.D. Mich. May 15, 2020) (compassionate release denied to Devil's Disciples gang member with heart disease and Crohn's disease because there are no cases at FCI-Allenwood and the risk of contracting the virus is higher in Michigan).

The BOP has taken substantial precautions throughout the federal prison system to mitigate the spread of COVID-19. *See Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020) (finding that the BOP reasonably responded the risk posed by COVID-19 by implementing a six-phase action plan to reduce the risk of COVID-19 spread, taking preventative measures including screening for symptoms, educating staff and inmates, quarantining new inmates, implementing regular cleaning, providing masks, and expanding testing).

Fata is not at high risk for contracting COVID-19 at his current place of incarceration, and his generalization regarding COVID-19 in the federal prison

system generally and his speculation that he "could" contract the virus and that the virus "could" jeopardize his health fails to satisfy § 1B1.13's criteria. The Court is not persuaded that extraordinary and compelling reasons exist that would render Fata eligible for compassionate release. *See United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D Mich. May 7, 2020) (a "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release identified by the Sentencing Commission"); *United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. Apr. 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility … whether Defendant will contract COVID-19, and whether he will develop serious complications does not justify the extreme remedy of compassionate release."); *see also United States v. Miller*, No 15-20609, 2020 WL 3425042 (E.D. Mich. June 23, 2020) (release denied five years early for inmate with uncontrolled diabetes, hypertension, and sleep apnea housed in institution with 14 active COVID-19 cases).

Further, § 1B1.13(2) only permits release if a defendant is "not a danger to the safety of any other person or to the community." The record does not support such a finding. The Court concurs with the Government's explanation that "Fata's horrific crimes alone, committed solely for greed for such a long period of time, establish his danger." (ECF No. 272 at pp. 26-27, PgID 4034-35.) The Court

17

believes that Fata's extended criminal behavior evidences a likelihood of continuing criminal conduct upon release. Therefore, Fata is not entitled to the relief he seeks.

### B. Factors Under 18 U.S.C. § 3553(a)

The Court, considering the sentencing factors under 18 U.S.C. § 3553(a), concludes that Fata's request for a significantly early release is not warranted. As explained above, these factors include the defendant's history and characteristics, the seriousness of the offense, the need to promote respect for the law and provide just punishment, general and specific deterrence, and the protection of the public. 18 U.S.C. § 3553(a). While Fata asserts that he has been a "model inmate" in the last few years, his years-long extensive criminal conduct was undeniably dreadful-to-behold, in that he perpetrated a scheme whereby he knowingly administered chemotherapy and other cancer-fighting treatments to hundreds of patients/victims who either did not have cancer or did not require the treatments, just so that he could bill for them.

The Court concludes that ordering Fata to be released after only serving less than five years of his 45-year sentence, would not serve § 3553(a)'s purposes; it would not promote respect for the law, would undermine the deterrence factor, and would not provide just punishment. This Court notes that a recent Sixth Circuit opinion, *United States v. Kinkaid*, 805 F. App'x 394, 395-96 (6th Cir. 2020),

approves a court's consideration of the percentage of time served in its required discussion of the § 3553(a) factors:

> As the district court explained, it considered "the length of time served only as a barometer to measure whether granting defendant early release would" advance the "relevant § 3553(a) factors, which the statute directs the [c]ourt to consider 'to the extent they are applicable.'" So the district court did not use the percentage of time served to make any hard-and-fast rules about when early release is appropriate. Instead, it appropriately considered whether release would serve § 3553(a)'s purposes given the minimal amount of time that Kinkaid served.
>
> Nor was the district court's focus on the amount of time served misplaced. District courts routinely weigh whether a certain amount of time is "sufficient, but not greater than necessary," to serve § 3553(a)'s purposes. That's what happens at sentencing. A district court may use that same calculus when deciding whether to grant a motion for compassionate release.

(internal record citation omitted).

## IV. CONCLUSION

The Court concludes that Defendant Fata is not an appropriate candidate for the extraordinary remedy of compassionate release. While the Court recognizes Fata's concern that he may be exposed to the COVID-19 virus, that concern does not create an "extraordinary and compelling" reason for a compassionate release sentence reduction that would have the effect of reducing his prison term by almost 40 years. Fata's underlying criminal conduct demonstrates a total lack of compassion for his many victims over the years. Fata's claims do not establish "extraordinary and compelling" reasons warranting a reduction of his term of

imprisonment. Finally, the Court has thoroughly considered the § 3553(a) factors, and concludes that significantly reducing his sentence would unjustifiably mitigate the nature and circumstances of his horrific offenses committed on human victims, undermine respect for the law, not result in a just sentence, undermine the deterrence factor of his criminal conduct, and finally, given his prior misconduct, not protect the public from his potential for further criminal activity if released. For all of these reasons, the Court DENIES Farid Fata's motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).

IT IS SO ORDERED.

Dated: July 10, 2020

s/Paul D. Borman
Paul D. Borman
United States District Judge