TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: REPLY BRIEF-Part 1
DATE: 03/13/2021 07:13:30 AM

CASE No. 2:13-cr-20600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA )
Plaintiff, )
)
v. ) No. 2:13-cr-20600
)
FARID FATA, ) Hon. Paul D. Borman
Defendant.

REPLY TO UNITED STATES' RESPONSE TO MOTION FOR RECONSIDERATION REDUCTION OF SENTENCE PURSUANT TO
18 U.S.C. 3582(C)(1)(A)

Farid Fata ("Fata"), respectfully submits this Reply Brief to the United States' Response in opposition to Fata's Motion

for Reconsideration for Reduction of Sentence Pursuant to 18 U.S.C. 3582 (C)(1)(A). In support thereof, Fata offers the

following:

Unsurprisingly, the Government:

(a) misinterprets Fata's "Extraordinary and Compelling Reasons" as related to:

   (i)  Fata's worsening "incurable" health problems of progressive and refractory diabetic neuropathy, and the impact of

        COVID-19 on Fata's health and immunosuppression (being diabetic and neutropenic at high COVID risk of reinfection

        per CDC guidelines) after he recently contracted COVID-19 in prison and now suffers Post-COVID "Long Haulers

        syndrome". The government "omitted" or "suppressed" key evidence from Fata's medical records that could distort

        this court's analysis and decision.

   (ii) Fata's exemplary Rehabilitation in prison, as the government ignores the substantial change in circumstances

        that the past 8 years have brought about.

   (iii) New COVID-19 inmate cases and death continue to rise at FCI Williamsburg since after Fata contracted the virus.

(b) asserts without foundation that the "sentencing 3553(a) factors" weigh against reducing Fata's sentence,

    painting Fata as a danger to the community. The government bases this argument entirely on Fata's original

    offense conduct completely ignoring Fata's record of accomplishments over the past 8 years, his PATTERN Score

    reported with "minimum" risk of recidivism, maintaining an excellent disciplinary record in prison, and the recent Sixth

    Circuit holding under United States v. Sherwood. U.S. App. LEXIS 2806 (6th Cir. Feb. 2, 2021).

— 1—

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

I - EXTRAORDINARY AND COMPELLING REASONS:

   In his brief, Fata has shown that his deteriorating incurable health problems of worsening diabetic neuropathy refractory to medical treatment limiting his physical activity and gait, plus persistent neutropenia with immune suppression, contracted COVID-19 in prison that place him at high risk for re-infection with the COVID-19 deadly variants, and now suffers Post-COVID "Long Haulers Syndrome", are newly developed during his incarceration, and meet the extraordinary and compelling reasons requirement per statute. Nothing prevents this court from finding that exceptional rehabilitation, unwarranted sentencing disparities, and COVID-19 dangers all constitute extraordinary and compelling reasons to grant compassionate release. Numerous courts have reached the same conclusion. United States v. Mc Donel. U.S. Dist. LEXIS 6401. (E.D. Mich. Jan. 13, 2021); United States v. Brown, 457 F.Supp. 3d. 691 (S.D. Iowa 2020).

   The government's muddy analysis of Fata's health condition after he recently contracted COVID-19 and now suffers post-COVID Long Haulers Syndrome is incorrect. Since COVID-19 struck FCI Williamsburg with force from December 2020 to March 2021 and the prison administration failed to protect the lives of staff and inmates (Exhibit A), the health services staff became overwhelmed with inmates requests and medical complaints (medical staff completing their clinical and administrative notes at 19:28 PM and 23:09 PM - Exhibit B). Fata's medical appointments for face to face consultation with a medical provider were cancelled and postponed twice, in November 2020 and February 4, 2021 (Exhibit C). The government "omitted" Fata's email communications with FCI Williamsburg's medical staff that indicate that Fata sought out additional care since testing positive and experiencing symptoms. These "inmate to staff messages" are integral part of Fata's medical records (Exhibit C). As he is yet to meet a Bureau provider, Fata sought a second opinion from an outside doctor because of the Bureau's abysmal care (Exhibit C, sealed). Fata's Eighth Amendment weighs in favor of release, because his chances of receiving quality care in the event of COVID-19 reinfection and receive COVID vaccine are greater upon release than when in BOP custody.

   On 1-30-2021, Fata wrote the Bureau provider complaining of persistent muscle pains /aches since he recovered from COVID-19. He also addressed his refractory diabetic neuropathy that was not responding to medical treatment. The Bureau provider replied on 2-3-2021 to watch for callouts (i.e. appointment). On 2-5-2021, Fata wrote again the medical staff as his February 4, 2021 appointment was cancelled and he needed to see a provider ASAP to address his post-COVID muscle pain. The Bureau provider replied on 2-9-2021: "You are on the schedule to be seen" (Exhibit C). On 2-25-2021, Fata sent a third email request to medical staff inquiring about his medical appointment as he was experiencing terrible symptoms and on 3-2-2021, Fata's email explains in detail his post-COVID complaints requesting to be seen as he felt miserable. On 3-2-2021, the medical staff replied again: "you remain on the schedule to be seen". Whether the government admits it or not, this vicious circle of email exchange series confirm that Fata sought out additional care since after he contracted COVID-19

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-------------------------------------------------------------------------------------------------------

and was symptomatic but he was never seen by the Bureau medical staff since 1-4-2021 when he had temperature check but no face to face consultation after he recovered from COVID-19. The content of the clinical encounter of 1-4-2021 is simply inaccurate as Fata was complaining of headaches and muscle pains that required acetaminophen treatment on 12-23-2020 (Exhibit C) prescribed by the Bureau staff, in addition to his cough but he recovered from these symptoms that recurred few weeks later to manifest as "Long Haulers Syndrome".

The emails exchange say it all as Fata was seeking urgent help: "I am concerned and feel anxious as I do not receive answers"..."I hope again that my requests are not falling on deaf ears". Indeed, the government failed to assess his risk: "How much more should Fata suffer after he contracted COVID-19 and what is the endpoint in light of the extraordinary and compelling risk to Fata of severe illness and death from reinfection with COVID-19 and its deadly variants should he remain in prison as Fata was not offered the COVID vaccine and it is not clear if or when the vaccine will be made available to him, as FCI Williamsburg experienced three COVID-19 related inmate deaths. Thus, the danger is not over for Fata. Instead, the government's speculation that Fata "could" be immune after he contracted the virus and "could" wait until the vaccine becomes available to him, fails as the CDC recently reported high risk for COVID-19 reinfection with the variants and a "unique risk of death from COVID-19 reinfection". United States v. Elias. U.S. App. LEXIS 251 (6th Cir. 2021) ([r]elying on official guidance from the CDC is a common practice in assessing compassionate release motions).

The government's false  analysis of Fata's health problems and his non-speculative risk of death from COVID-19 reinfection being diabetic and immune compromised with neutropenia, is also rebutted as the CDC lists diabetes, independent of whether it is controlled with medication or insulin, as a condition that places individuals at an increased risk to contract COVID-19. People of "Any Age" with underlying medical conditions and pre-existing damage to [blood] vessels, for example from diabetes, face higher risk of serious disease...[r]ecent CDC data on hospitalized patients in 14 states found that ...as many had diabetes (citing how corona virus kill ? SCIENCE (April 17, 2020).  United States v. Herring. No.6:14-cr-00008-GFVT-CJS, U.S. Dist. LEXIS 220299, (E.D. Kentucky,  Nov. 24, 2020). Even if this court considers Fata's type-2 diabetes as being controlled with oral medication, and does not rise to the level of being extraordinary and compelling to grant release, his diabetic neuropathy, however, has progressed and is refractory to two line medical treatment (failed Duloxetine and oxacarbazepine) that limits Fata's physical activity and gait as detailed in Fata's brief, and when combined with the COVID-19 reinfection dangers as Fata is immune compromised, constitute extraordinary and compelling risk associated with increased mortality as detailed above.

The government fails to fully present to the court the severity of the ongoing December 2020 - March 2021 COVID-19 outbreak at FCI Williamsburg and its impact on Fata's health problems and immunosuppression after he  recently contracted

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B
--------------------------------------------------------------------------------------------------

COVID-19 (see Footnote 1). The number of COVID-19 cases and new inmate deaths at FCI Williamsburg has materially

increased since this Court's July 10, 2020 Order (www.bop.gov/coronavirus), and the disease has made its way into Fata's

housing unit, where it had previously been absent. This time around Fata will be significantly safer at home where he can

minimize contact with others than in prison. As of 3-5-2021,the BOP reported that 41% of staff have gotten the COVID

vaccine while only 8.4 % of inmates have been inoculated. As Fata indicated earlier, he was not offered the COVID vaccine

and it is not clear if or when the vaccine will be made available to him.

The government fails to explain why Fata's release would not be suitable and ignores his post-sentencing rehabilitation

and conduct in prison. The government's account of "hate to Fata" is best rebutted by Fata's "plan of salvation" as Fata does

not dispute the seriousness of his offenses and he continues to pray for every soul affected by his crimes. Fata plans to

pay his restitution after his release as he is already paying his Financial Responsibility Payments in prison. Fata has

been an exemplary inmate for the past 8 years. During that time, Fata has worked hard to improve himself and his

situation by completing numerous classes with apprenticeship programs as he just completed the BOP Threshold Program

(Exhibit E). Fata provided service to fellow inmates with special education through tutoring GED in the SLN (Special

Learning Needs) class. In July 2020, Fata sent letters to this court and communicated his progress in prison. Fata has

not sustained a single infarction, proving that he can conform his behavior to societal expectations. His progress report

confirms that Fata is making conscious effort towards positive reentry into society. Thus, further incarceration would

serve no purpose for defendant or the public.

Fata is asking this court to look at the substantial change in circumstances and rehabilitation that the past 8 years

have brought about and release Fata to his residence where he will work at his residence with the Christian Community

in Michigan. Indeed, in a good faith effort, Fata was intending to change his life. He attests  that the 8 years of

incarceration "have been a blessing" because they transformed [him] into the man he is today. Fata's actions reveal that

he has gained valuable insight and is ready to join the community. Fata asserts that "If given the chance, future

accomplishments will help me put my past behind me, or even prove that chapter of my life does not define me".

Under these circumstances, additional rehabilitation in prison is unnecessary to achieve the goals of sentencing.

Instead, Fata should be offered a vocation to work with the Christian community in need, in Michigan as detailed in his

brief. Fata should be released to serve his supervised release as his risk for recidivism based on the PATTERN Score is

"minimum", with no criminal history. This court is urged to command the U.S. Probation office to check and inspect Fata's

release residence (Exhibit E, sealed), being suitable for Fata's transition back into society, as part of his release plan.

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: REPLY BRIEF-Part 2
DATE: 03/13/2021 07:14:33 AM

II. 3553(a) FACTORS:

    The  Government argues that the 3553(a) factors weigh against reduction because Fata's crimes were extremely

serious and releasing Fata after only 8 years of a 540 month sentence would not provide just punishment, promote

respect for the law, reflect  the seriousness of his offenses, or protect the public from further crimes by the defendant.

Rather than grapple with the totality of the circumstances, the government bases this argument entirely on Fata's

original offense conduct, completely ignoring Fata's record of accomplishments over the past 8 years, without balancing

Fata's risk of death from COVID-19 reinfection should he remain in prison.

    To start, more and more courts including the Eastern District of Michigan have granted compassionate release by

reducing effective life sentences to time served for defendants who served  a percentage of time, finding

the defendant's release would serve 3553(a)'s purposes. Fata's research has disclosed cases with life or effective life

sentences that are analogous to Fata's long sentence that were granted compassionate release and have rebutted the

government's argument as raised above including the deterrence factor.

   At the original sentencing, Fata's advisory guidelines range was 30 years to life and this court sentenced Fata to 540

months. Serious, yes, but not 45 years serious. A district court sentencing Fata today, under United States v. Booker,

543 U.S. 220 (2005), would conclude that a lesser prison sentence is "sufficient", but not greater than necessary" to serve

3553(a)'s purposes. 18 U.S.C. 3553(a), as the nature and circumstances of the offense being non violent, as well as the

history and characteristics of the defendant show strong grounds for a downward variance (age of 55, exemplary

rehabilitation, PATTERN Score of "minimum", no criminal history, avoid sentence disparity when compared to similar

offenses (see Fata's brief), Fata's health problems after Fata contracted COVID-19 in prison, and the recent COVID-19

mortality seen at FCI Williamsburg manifested with three-inmate deaths) that merit a lesser sentence even as Fata's

guidelines remain the same.

    Therefore, a prison sentence reduction would not depreciate the "seriousness of the offense" or the importance of

"respect for the law" and "just punishment" as the need for a lengthy prison sentence diminishes after the defendant has

 served a portion of it when the circumstances have changed. The court has the benefit of considering all these factors in

assessing the need for adequate deterrence and protection of the Public. See 18 U.S.C. 3553 (a))(2)(B)-(C).

The Sixth Circuit's precedent recognizes under "Jones", "Elias", "Ammons", "Hampton" and "Sherwood" (Footnote 2) that

U.S.S.G. 1B1.13 does not apply to post-First Step Act Sentence Reduction Motions brought by defendants. Therefore, "age"

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------------------------

and "the requirement that the defendant should serve at least 10 years or 75 percent of his or her term of imprisonment, whichever is less, are no longer determinative factors to grant compassionate release. In United States v. Kincaid, 805 F.App'x 394 (6th Cir. 2020), the Sixth Circuit indicated that the district court considered the "length of time served only as a barometer to measure whether granting defendant early release would" advance the relevant 3553(a) factors. However, the Sixth Circuit noted that "the district court did not use the percentage of time served to make any hard-and-fast rules about when early release is appropriate". (emphasis added). In Fata's case, Fata has been incarcerated since his arrest on August 6, 2013 (see PSR). Assuming 54 days per year good conduct time credit plus the First Step Act time credit for programming (4000 hrs, see Footnote 3) this equates to a sentence of 10 years. In United States v. Fields. No. 12-cr-20274. U.S. Dist LEXIS 229692 (E.D. Mich Dec. 8, 2020) and in United States v. Owens. No. 18-cr-20214. U.S. Dist LEXIS 165449 (E.D. Mich. Sept 10, 2020), this court granted release as defendant has served less than 50% of the original sentence. Though these two cases have relatively short sentences, and the defendants characteristics do not match Fata's (violent crimes, prior criminal history).

But legislative and modern sentencing systems do not suggest that a court is precluded from considering the length of a defendant's sentence in its compassionate release determination. When Congress first created the path to compassionate release as part of the Sentencing Reform Act of 1984, Pub.L.No. 98-473, 98 Stat. 1837 (Oct. 12, 1984), the accompanying Senate Report indicated that sentence modifications would be appropriate in "cases of severe illness, and cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence". S. Rep. No. 98-225, at 55-56 (1984). The same report states that sentence modifications can apply "regardless of the length of sentence, to the unusual case in which the defendant's circumstances are so changed by severe illness, that it would be inequitable to continue the confinement of the prisoner". S. Rep. No. 98-225 at 121.

Fata recognizes that this court has broad discretion to consider and balance all these factors that his release would serve 3553(a)'s purposes given the amount of time Fata has already served, especially after considering Fata's extraordinary and compelling risk to die from COVID-19 reinfection should he remain in prison as Fata was not offered the COVID vaccine and he recently contracted COVID-19 in prison where three inmates have died from COVID-19.(United States v. Westine. No. 20-5233. U.S. App. LEXIS 27029. (6th Cir. August 25, 2020))(the inmate has demonstrated extraordinary and compelling risks as the pandemic would strike the facility in which he was incarcerated where medically vulnerable people would die at disproportionate rates from the virus).

In United States v. Boddie, U.S. Dist. LEXIS 11741, 1:98-cr-00038-JMS-MJD-02 (S.D. Indiana, January 22, 2021), the court "recognizes that the guidelines called for Boddie to receive a life sentence. And, it appears, if he were sentenced today, the guideline range of imprisonment would still be life. But, under "Booker", if Boddie were sentenced today,

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

-------------------------------------------------------------------------------------------------

the life-sentence guidelines would not be mandatory. The court indicated that "when combined with the risk Mr. Boddie

faces from the COVID-19 pandemic, the court finds that under the facts presented by this case, including post-sentencing

defendant's conduct and other relevant information about a defendant's history and rehabilitation, the 3553(a) factors

weigh in favor of reducing Mr. Boddie's sentence to time served as additional imprisonment beyond the 22 years

Mr. Boddie has already served would be more than what is necessary to provide just punishment for Boddie's offenses".

   In United States v. Castillo. U.S. Dist. LEXIS 94611 (S.D. Texas, May 28, 2020), the district court reduced the

concurrent terms of life imprisonment for conspiracy to possess with intent to distribute cocaine and 240 months

imprisonment for conspiracy to commit money laundering to time served (DE 144, pp. 1-2). Castillo has no criminal

history and has served less than 12 years of the life sentence. The court took into consideration the evidence of

rehabilitation during the 12-year period of her incarceration, and indicated that "this sentence has served and continues

to serve as adequate deterrence and to protect the public from further crimes by the defendant, which, given Castillo's

age and rehabilitation, this court expects will not occur. 18 U.S.C. 3553(a)(2)(B)-(C). See also United States v. Gardner.

No.14-cr-20735-001, U.S. Dist. LEXIS 129160, at *8 (E.D. Mich. July 22, 2020)(the court must weigh the value of deterrence

against increasing the threat of a possibly lethal COVID-19 infection".Id. "The district court finds that the possibility of

exposure outweighs the value of deterrence"), and that is exactly Fata's position where a longer sentence during a pandemic

would also have a greater potential for COVID-19 reinfection in prison with the deadly variants as Fata's immune system is

significantly compromised that caused him to contract COVID and become symptomatic, and suffer Post-COVID

"Long Haulers Syndrome", as three inmates at FCI Williamsburg have died from COVID-19, two of the three inmates

were housed in the same unit where Fata is housed.

See also United States v. Bass No. 97-80235-1, U.S. Dist LEXIS 11719 (E.D. Mich. Jan 22, 2021). The court reduced two

concurrent terms of life in prison, for drug trafficking 21 U.S.C. 846 and Firearms Murder during a drug trafficking crime

in violation of 924 (j) to immediate release. Defendant served 21 years in prison, and has low pattern score. The District

Court expressed concern for Bass's health in FCI McKean as the prison experienced COVID-19 outbreak affecting 147

prisoners. Judge Tarnow indicated that Bass's rehabilitative efforts are purely self-motivated (citing 18 U.S.C. 3553(a)(2)

(B)-(C)) (finding that defendant's rehabilitation supported the conclusion that incarceration was not necessary for deterrence

and public protection purposes. The Court cited case law that presents reduction of life sentences under the compassionate

release status. See United States v. Hope, U.S. Dist LEXIS 86395, at *6 (S.D. Fla. April 10, 2020)(reducing a mandatory

minimum life sentence due to sentence disparities, the defendant's rehabilitation, and his health risk due to COVID-19);

see also United States v. Millan, U.S. Dist. LEXIS 59955, at *48 (S.D. N.Y. April 6, 2020)(granting compassionate release to

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

-------------------------------------------------------------------------------------------------------

defendant serving a life sentence upon evidence of his rehabilitation, remorse, and record as a "model prisoner"). To end,

Judge Tarnow noted: "the gravity of releasing a defendant serving a life sentence is not lost on this court. Such a decision

must be approached with extraordinary care and only be granted in cases of transformational redemption". And that is

exactly what the Government ignores as Fata's rehabilitation and redemption are exemplary. Fata's characteristics have

changed for the better during his incarceration. He is a different man now than he was before August 6, 2013 (See

"Rehabilitation" in Fata's brief (DE# 302)). Further, incarceration would serve no purpose for Fata or the public, as Fata is

safe to be at large, and poses no danger to any individual or the public as detailed in Fata's Supplemental Brief.

    The Government's argument that Fata's long sentence is justified to keep him in prison and perish in order to protect

the public is not persuasive and is undermined by:

(a) Fata's Pattern Score as his recidivism risk is "minimum", with no criminal history whatsoever.

(b) Fata's exemplary post-sentencing conduct, rehabilitation and continued respect of the rules in prison with no infarction

whatsoever, with his recent promotion as he was selected to work in Unicor (though a harbinger of COVID-19 spread) and

join the "Preferred Housing Unit" (Exhibit D).

(c) BOP considering to decrease Fata's security level in custody as Fata's security points are +4 consistent with a camp

security (Exhibit E).

(d) Fata's health problems as Fata was not offered the COVID vaccine, and being immune compromised he recently

contracted COVID-19. Should he remain in prison, his risk for COVID-19 reinfection and death with the variants is not

speculative as three inmates at FCI Williamsburg have already died from COVID-19.

(e) Fata is offered a job as "ordained minister" to work at his release residence with the Christian community in need,

in Michigan as detailed in Fata's Supplemental brief. The Government never acknowledged any of these positive facts.

(f) The recent holding in United States v. McDonel, U.S. Dist. LEXIS 6401 (E.D. Mich., January 13, 2021) where Judge D.

Lawson noted that "in granting compassionate release, the district courts relied not only on the defendants' charge (Mc

Donel's sentence of 107 years in prison in 2008 after engaging in a sprue of commercial store robberies using a handgun,

reduced to 20 years, charged with 924(c)) but on full consideration of the defendants' individual circumstances, "like their

age when sentenced, sentence already served, health problems, and behavior in prison. Numerous district courts have

reached the same conclusion...the other recognized goals of deterrence and protecting the public from future crimes that

the defendant may commit can be achieved with far shorter sentence".

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

-------------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: REPLY BRIEF- PART 3
DATE: 03/13/2021 07:12:35 AM

In light of the extraordinary and compelling risk to Fata of severe illness and death from COVID-19 reinfection should he

remain in prison (as Fata was not offered the COVID vaccine, he now suffers Post COVID Long Haulers Syndrome with

three COVID-related inmate deaths at his prison), the past 8 years of incarceration (equating to 10 years counting the

54 day per year good conduct time credit plus the First Step Act time credit for programming and PA's, See Footnote 3)

were sufficient to provide just punishment, promote respect for the law and reflect the seriousness of the offense, and

deter crime as Fata poses no risk to the public and has engaged in an exemplary rehabilitation and vocational activities

(Exhibit E) with excellent post-sentencing conduct, trying in good faith to make a change to his life.

Therefore, a reduction in sentence is warranted, as the court considers this "changed landscape when considering the

goals of sentencing". (United States v. Nafkha. No. 2:95-cr-00220-001-Tc. U.S. Dist. LEXIS 5814. D. Utah. Jan. 8, 2021)

(The District Court reduced 47 years from Nafkha's 72 year and 8 month-sentence for bank robbery 2113(a), carrying

firearms 922(g) and 924 (c). i.e. Defendant served 34% of his sentence). See also (United States v. Owen. No. 2:03-cr-

197-1. U.S. Dist. LEXIS 237901. E.D. Virgnia. Dec. 17, 2020)(The court reduced 47 years from Owen's 762 months sentence

for 29 armed robberies and two car-jackings. i.e. Defendant served 20% of his sentence). See also (United States v. Beam.

U.S. Dist LEXIS 233265. (N.D. Alabama. Dec. 11, 2020)) (The district court reduced the sentence of 168 months for drug

crimes to time served after serving 36 months only, Defendant served 21% of her sentence, followed by supervised release).

III. CONCLUSION:

It all comes to the discretion of this court whether Fata should remain in prison and perish from COVID-19, as this may not

promote respect for the law. Fata's motion is all about making for past mistakes, as his release does not support his past

conduct. But Fata's plan of redemption that continues and is maintained "after and beyond" his release warrants this court

to consider this changed landscape that accomplish the goals of sentencing.

Respectfully Submitted                 *farid fata*          3 - 13 - 2021

Farid Fata,
# 48860-039
FCI Williamsburg
P.O. Box 340
Salters, SC 29590

-------------------------------------------------------------------------------------

Footnote 1: A previous COVID-19 infection does not preclude Compassionate Release. United Sates v. Jones, 980 F.3d
1098, U.S. LEXIS 36620 at*2, n.6 (6th Cir. 2020).

Footnote 2: United Sates v. Jones, 980 F.3d 1098, U.S. LEXIS 36620 (6th Cir. 2020); United States v. Ammons, No. 20-
5799. U.S. App. LEXIS 38494 (6th Cir. Dec 9, 2020), United States v. Hampton, U.S. App. LEXIS 1512 (6th Cir. Jan. 19, 2021);

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

-----------------------------------------------------------------------------------------------

United Sates v. Elias, U.S. App'x LEXIS 251 (6th Cir. Jan. 6, 2021); United States v. Sherwood, U.S. App. LEXIS 2806 (6th Cir. Feb 2, 2021).

Footnote 3: Under the First Step Act, Fata is entitled to, and the BOP has recently started issuing the Evidence Based Recidivism Reduction (EBRR) Programs and PA's time credits for the number of hours leading to completion of approved programs in the FSA Programs Guide. Fata completed educational, vocational (Unicor), Non-residential Drug program, and the Religious Program (Nine-month Threshold Program), and Apprenticeship (Custodial maintenance of 2228 hours). See exhibit E in Fata's Reply Brief and exhibit F in his Supplemental brief. 15 days of time credit for every 30 days of EBRR program or PA as Fata's PATTERN score is "minimum". One day is 8 hour period of programming.
Based on Fata's Bureau of Prisons Inmate Data Sheet (DE 272-1, Exhibit 6, Pg ID 4039, sealed, filed by the government on May 19, 2020), Fata served the equivalent of 10 years with remaining 30 years; i.e. a ratio of 33% served).

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

FROM: 48860039
TO:
SUBJECT: MOTION TO SEAL EXHIBITS
DATE: 03/15/2021 07:15:29 AM

CASE No. 2:13-cr-20600

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:13-cr-20600 |
| | ) | |
| FARID FATA | ) | Hon. Paul D. Borman |
| Defendant. | ) | |

MOTION TO SEAL EXHIBITS TO REPLY

Farid Fata ("Fata") respectfully submits this Motion to seal all Exhibits in relation to Fata's Reply to the Government's

Response for Reconsideration of Sentence Reduction under 18 U.S.C. 3582(C)(1)(A). Given the sensitive nature of the

content of the exhibits, Fata respectfully requests the Reply exhibits be placed under Seal of Court.

Respectfully Submitted,

*Farid Fata*          3 - 15 - 20 21

Farid Fata
#48860-039
FCI Williamsburg
P.O. Box 340
Salters, SC 29590

— 11 —

EXHIBIT A

# 35 staff COVID-19 cases, 2 inmate deaths reported at FCI Williamsburg

By Jared Kofsky and Lillian Donahue    January 21, 2021 at 4:15 PM EST - Updated January 21 at 6:59 PM

SALTERS, S.C. (WCSC) - A Lowcountry correctional facility now has one of the highest numbers of confirmed active COVID-19 staff cases among federal prisons around the nation.

Federal Correctional Institution Williamsburg in the Salters area is currently reporting 35 coronavirus cases among employees, according to the U.S. Department of Justice's Federal Bureau of Prisons COVID-19 database. Only 10 other federal prisons have more reported active COVID-19 cases among staff.

The Department of Justice is one of the 20 largest employers in Williamsburg County, according to the S.C. Department of Employment and Workforce.

The steady increase in reported cases over the last two weeks comes after the BOP's database indicated a total of eight active COVID-19 cases among staff. The agency says that there have now been two coronavirus-related inmate deaths and 31 active cases among people incarcerated at FCI Williamsburg.

Earlier this month, the president of a union representing FCI Williamsburg employees called for the removal of executive staff, alleging in part that the process of screening individuals entering the complex for potential COVID-19 symptoms was shifted from outside the facility to inside in early December.

"They made some changes on the process of what we were doing … that allowed COVID to actually walk into the institution," American Federation of Government Employees' Local 525 President Stephen Pinckney said at the time. "From there, it spread like wildfire once it got in."

However, BOP spokesperson Justin Long subsequently said in part that "COVID-19 screening for visitors and staff at FCI Williamsburg has remained outside the secure confines of the institution since its implementation in March 2020."

Following previous stories about the facility, Live 5 Investigates received numerous calls and emails from relatives of federal prison inmates along with communications from people incarcerated at FCI Williamsburg expressing COVID-19 concerns.

In a call to Live 5 Investigates using the prison's phone system last week, FCI Williamsburg inmate Josand Farmer stated that he tested positive for the virus and that he wants the facility to allow him to be seen by an outside doctor.

"Right now I'm having issues with my lungs," Farmer said. "I've been given steroids for my lungs and to breathe. I am having erratic heart rates, muscle pains, headaches, [and] things of that nature."

Williamsburg County Emergency Medical Services Director Judy McCrea told Live 5 Investigates that "WCEMS responded to 22 calls in 2020 to FCI Williamsburg," noting that "we were not provided any information on COVID-19 on any call."

On Thursday afternoon, following calls and emails received from people incarcerated inside FCI Williamsburg using the prison's phone and computer systems, Live 5 Investigates was notified that further communication with

**EXHIBIT B**

(sealed)

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Inmate Name: | FATA, FARID | | Reg #: | 48860-039 |
| Date of Birth: | 04/09/1965 | Sex:      M      Race: WHITE | Facility: | WIL |
| Note Date: | 12/18/2020 23:09 | Provider:    Davis, Christopher | Unit: | A04 |

POC Note - Default encounter performed at Housing Unit.
**Administrative Notes:**

ADMINISTRATIVE NOTE   **1**          Provider:   Davis, Christopher APRN/FNP-C

COVID-19 RNA point of care testing completed on FATA, FARID, register number 48860-039 at 12/18/2020 19:27
COVID-19 RNA: Positive
Reference Range: Negative
Critical Result: Positive
Unknown
Comments: rapid abbot pos 12/18/2020.

Went to SHU and educated inmate on COVID 19 results.
Reports that he has a 2 day cough. No other symptoms.
Alert and oriented.  Ambulatory without assistance.
No resp distress.
Able to speak in full sentences.
No use of accessory muscles.

**ASSESSMENTS:**

Confirmed case COVID-19, U07.1 - Current

**New Radiology Request Orders:**

| Details | Frequency | End Date | Due Date | Priority |
|---|---|---|---|---|
| General Radiology-Chest-PA/Lateral | One Time | | 01/18/2021 | Routine |

Specific reason(s) for request (Complaints and findings):

hx covid 19 pos

**Copay Required:** No          **Cosign Required:**  No
**Telephone/Verbal Order:**  No

Completed by Davis, Christopher APRN/FNP-C on 12/18/2020 23:10

**Bureau of Prisons**
**Health Services**
**COVID-19 RNA**

| Begin Date:  11/01/2020 | End Date:     01/12/2021 |
| Reg #:       48860-039 | Inmate Name:  FATA, FARID |

(Reference Range - Negative)

| Effective Date | COVID-19 RNA | | Provider |
|---|---|---|---|
| 12/18/2020 19:27 WIL | Positive | Unknown | Davis, Christopher APRN/FNP-C |

rapid abbot pos 12/18/2020

   **Orig Entered:**   12/18/2020 19:28 EST   Davis, Christopher APRN/FNP-C

**Total:  1**

**EXHIBIT C**

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------------------------

FROM: Provider
TO: 48860039
SUBJECT: RE:***Inmate to Staff Message***
DATE: 02/03/2021 10:42:02 AM

Watch callouts

>>> ~^!"FATA, ~^!FARID" <48860039@inmatemessage.com> 1/30/2021 5:03 PM >>>
To: Dr. Hoey
Inmate Work Assignment: csd

Dr. Hoey, (important)

As you know, I have diabetes with diabetic neuropathy and neutropenia and gastro-intestinal bleeding. I recently recovered from COVID-19 after experiencing cough, headaches and fatigue.

I have 3 concerns that I need you to address:

1- I have persistent muscles aches/pain since I recovered from COVID. what to do ? When is my medical visit coming ?

2- My diabetic neuropathy / my feet are killing me. I have stopped taking Oxcarbazepine because after 100 day treatment, it is not helping me feet burning pain at all. I can barely walk. Please advise

3- It came to my attention that my records show care level 1. It was always care level 2. Can you correct / amend it to care level 2 as it has always been.

PLEASE ADVISE. THANK YOU

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

FROM: Provider
TO: 48860039
SUBJECT: RE:***Inmate to Staff Message***
DATE: 02/09/2021 11:47:02 AM

You are on the schedule

>>> ~^!"FATA, ~^!FARID" <48860039@inmatemessage.com> 2/5/2021 8:02 AM >>>
To: Mr. Davis
Inmate Work Assignment: csd

Mr. Davis,

Just for clarification of my previous e-mail: I have checked and found out that my last clinical encounter was on
September 30, 2020. My November 2020 appointment was cancelled, as well as the February 4, 2021 encounter.

I have not seen the provider since Septmeber 30, 2020, nor after I suffered COVID-19 in prison

I appreciate that I can see you ASAP to address many of my health problems and pain

Thank you so much for your understanding

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

---------------------------------------------------------------------------------------------------

FROM: 48860039
TO: Provider
SUBJECT: ***Request to Staff*** FATA, FARID, Reg# 48860039, WIL-A-B
DATE: 03/02/2021 07:11:55 AM

To: Dr. Hoey
Inmate Work Assignment: unicor

Dr. Hoey,

1- I tested positive for COVID-19 on December 18, 2020 after 2 day cough, muscle aches, headaches and fatigue. 2-3 weeks after recovery, I since started having new onset joint and muscle pains (ARMS, THIGHS, ELBOWS, KNEES). Since end of January 2021 to present, my muscle and joints pain are getting worse, more frequent and intense. I have profound fatigue and brain fog, forgetting things (forgetting placing things such as my ID, sometimes can't remember dates...).

Mrs. Mims told me I have appointment to see a provider scheduled in february but I never received a call-out, also proven by an e-mail that you guys have sent me through "requests to staff". Things are dragging here, there is never a sense of urgency or timely intervention, I feel miserable and need your assessment as soon as possible. Meanwhile, while still waiting for my appointment to see you, I seeked a second opinion from outside doctor who opined that I have Post-COVID Long Haulers Syndrome, which is commonly described by the CDC and Hopkins in patients who have recovered from COVID.

Please advise and do something. I am concerned and feel anxious as I do not receive answers.

2- With respect to my diabetic neuropathy, my burning pain in both feet is worse (pain 10 over 10), I have stopped taking oxacarbazepine after receiving 100 day treatment as it did not help my neuropathy at all. You have recommended that we should consider gabapentin, I need to know your plan.

Please advise. I hope again that my requests are not falling on deaf ears. thank you
-----Provider on 2/26/2021 8:32 AM wrote:

>
You remain on the schedule to be seen.

>>> ~^!"FATA, ~^!FARID" <48860039@inmatemessage.com> 2/25/2021 6:00 PM >>>
To: Dr. Hoey
Inmate Work Assignment: unicor

I was told that I should see a provider in the month of february post-COVID infection as I am experiencing terrible symptoms. E-mail communications with your department 3 weeks ago stated that I am on the schedule.
My requests are obviously falling on deaf ears: I have been waiting for the whole month of february and I am not placed on call-out.
Mrs. Mims checked for me and stated that my appointment is sometimes in february, but I am yet to be placed on call-out.

Please advise

TRULINCS 48860039 - FATA, FARID - Unit: WIL-A-B

---------------------------------------------------------------------------------------

FROM: Provider
TO: 48860039
SUBJECT: RE:***Inmate to Staff Message***
DATE: 03/02/2021 01:27:02 PM

You remain on the schedule to be seen.

>>> ~^!"FATA, ~^!FARID" <48860039@inmatemessage.com> 3/2/2021 7:11 AM >>>
To: Dr. Hoey
Inmate Work Assignment: unicor

Dr. Hoey,

1- I tested positive for COVID-19 on December 19, 2020 after 2 day cough, muscle aches, headaches and fatigue. 2-3 weeks after recovery, I since started having new onset joint and muscle pains (ARMS, THIGHS, ELBOWS, KNEES). Since end of January 2021 to present, my muscle and joints pain are getting worse, more frequent and intense. I have profound fatigue and brain fog, forgetting things (forgetting placing things such as my ID, sometimes can't remember dates...).

Mrs. Mims told me I have appointment to see a provider scheduled in february but I never received a call-out, also proven by an e-mail that you guys have sent me through "requests to staff". Things are dragging here, there is never a sense of urgency or timely intervention, I feel miserable and need your assessment as soon as possible. Meanwhile, while still waiting for my appointment to see you, I seeked a second opinion from outside doctor who opined that I have Post-COVID Long Haulers Syndrome, which is commonly described by the CDC and Hopkins in patients who have recovered from COVID.

Please advise and do something. I am concerned and feel anxious as I do not receive answers.

2- With respect to my diabetic neuropathy, my burning pain in both feet is worse (pain 10 over 10), I have stopped taking oxacarbazepine after receiving 100 day treatment as it did not help my neuropathy at all. You have recommended that we should consider gabapentin, I need to know your plan.

Please advise. I hope again that my requests are not falling on deaf ears. thank you
-----Provider on 2/26/2021 8:32 AM wrote:

>

>>> ~^!"FATA, ~^!FARID" <48860039@inmatemessage.com> 2/25/2021 6:00 PM >>>
To: Dr. Hoey
Inmate Work Assignment: unicor

I was told that I should see a provider in the month of february post-COVID infection as I am experiencing terrible symptoms.
E-mail communications with your department 3 weeks ago stated that I am on the schedule.
My requests are obviously falling on deaf ears: I have been waiting for the whole month of february and I am not placed on call-out.
Mrs. Mims checked for me and stated that my appointment is sometimes in february, but I am yet to be placed on call-out.

Please advise

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

-----------------------------------------------------------------------------------------------------

FROM: 48860039
TO: Goldberg, Jack; ███████████; ███████████
SUBJECT: POST COVID SYNDROME
DATE: 02/08/2021 07:34:59 AM

Dear Dr. Goldberg, (important)

Hope this finds you well. I need your advice as "second opinion" regarding my health problems that I have been suffering here at FCI Williamsburg. In Mid December 2020, I complained of cough, fatigue and headaches. On December 18, 2020, I tested positive for COVID-19 (Abbot RNA rapid test) as the prison here experienced one of the worst COVID outbreaks (three inmates at FCI Williamsburg have died so far from COVID, 2 of them are housed in the same housing unit I am housed). I was isolated in the Special Housing Unit for 3 weeks. My cough and headaches lasted 9 days but resolved later (headaches required Acetaminophen treatment using 2 refills).
On January 5, 2021, My repeat RNA COVID Test was reported as "NOT DETECTED" and my cough and headaches resolved.

But over the past 4 weeks, since after my recovery, I have been complaining of Brain Fog, fatigue, joint and muscle pains (shoulders, elbows, arms, and thighs), and loss of smell. I have requested help from the medical staff here at FCI Williamsburg, but my appointment was cancelled. I am waiting on rescheduling me but things move so very slow here, and many times I do not get answers.

I have asked a friend to research these Post-COVID symptoms (also reported by NPR - The Pharmacy program), and it was stated that these symptoms are consistent with POST-COVID SYNDROME well reported by the CDC and Johns Hopkins who described series of COVID patients who manifested similar symptoms to mine, as a chronic inflammatory reaction to COVID. Unfortunately, the Hopkins data stated that there was no pharmaceutical medication / treatment approved for relief to salvage these symptoms that may become persistent for months after recovery from the acute episode of COVID-19. As you know, I am neutropenic and immune suppressed and cannot overcome the virus completely.

Dr. Goldberg: I try to think positive as my spiritual life is giving me the power to keep going in prison, but there are days where I feel MISERABLE, I cannot even get out of bed because of my chronic pain. My medical complaints are falling on deaf ears as there is nothing much to do for these POST COVID Symptoms, as well as for my progressive / refractory diabetic neuropathy with burning in both feet that has failed two line therapy of Duloxetine, and later oxacarbazepine (I am not taking any treatment for the neuropathy right now as nothing is working). My Gait and physical activity are so limited that I have stopped any work-out.

Dr Goldberg:
1- Is there anything I can do, or you can advise for my POST COVID symptoms for palliative relief ?
2- Is there anything you can advise for my refractory diabetic neuropathy ?

Thank you again for your help

God bless you

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

---------------------------------------------------------------------------------

FROM: Goldberg, Jack
TO: 48860039
SUBJECT: RE: SECOND OPINION
DATE: 02/11/2021 06:06:16 PM

One of the dozens of unusual symptoms that have emerged in COVID-19 patients is a condition that's informally called "COVID brain" or "brain fog." It's characterized by confusion, headaches, and loss of short-term memory. In severe cases, it can lead to psychosis and even seizures. It usually emerges weeks after someone first becomes sick with COVID-19.

In the February 8, 2021, issue of the journal Cancer Cell, a multidisciplinary team from Memorial Sloan Kettering reports an underlying cause of COVID brain: the presence of inflammatory molecules in the liquid surrounding the brain and spinal cord (called the cerebrospinal fluid). The findings suggest that anti-inflammatory drugs, such as steroids, may be useful for treating the condition, but more research is needed.

"We were initially approached by our colleagues in critical care medicine who had observed severe delirium in many patients who were hospitalized with COVID-19," says Jessica Wilcox, the Chief Fellow in neuro-oncology at MSK and one of the first authors of the new study. "That meeting turned into a tremendous collaboration between neurology, critical care, microbiology, and neuroradiology to learn what was going on and to see how we could better help our patients."

FARID FATA on 2/11/2021 2:49:29 PM wrote
Thank you Dr. Goldberg for your advice: The problem is that Gabapentin is non-formulary in the BOP.
I am waiting on my consultation / clinical encounter with the Bureau physician to discuss whether they can give me gabapentin and whether region will approve it. All treatments they gave me so far have failed (Duloxetine and oxacarbazepine). Ibuprofen does not help the pain. My pain is 10 over 10, I try to look positive but it is tough
to endure the pain and suffering.

God bless
-----Goldberg, Jack on 2/10/2021 9:06 PM wrote:

>

Hello Farid

The syndrome is relatively common post infection and are being called Long haulers syndrone

There are no specific treatment but given your peripheral neuropathy you might benefit from  gabapentin and vitamin supplements

meditation and Tai Chi have been useful as well

I will look into recent therapies on the subject and email you again

Jack

FARID FATA on 2/10/2021 1:36:43 PM wrote
Dear Dr. Goldberg,

How are you ?
Just checking on whether you received my previous email for seeking a second opinion /Advice from you

Thank you so much

# Bureau of Prisons
## Health Services
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Inmate Name: | FATA, FARID | | Reg #: | 48860-039 |
| Date of Birth: | 04/09/1965 | Sex:      M      Race: WHITE | Facility: | WIL |
| Note Date: | 12/23/2020 13:27 | Provider:   Davis, Christopher | Unit: | Z04 |

Admin Note - Orders encounter performed at Health Services.
**Administrative Notes:**

ADMINISTRATIVE NOTE   **1**          Provider:   Davis, Christopher APRN/FNP-C
has COVID

**New Medication Orders:**
<u>Rx#</u>          <u>Medication</u>                                                                          <u>Order Date</u>
Acetaminophen 325 MG Tablet                                           12/23/2020 13:27
<u>Prescriber Order:</u>     325 mg Orally  -  three times a day PRN x 14 day(s) -- 2 tablets every 8
hours as needed for pain or fever.
Do not take if allergic
Indication:   Confirmed case COVID-19

**Copay Required:** No          **Cosign Required:**  No
**Telephone/Verbal Order:**  No

Completed by Davis, Christopher APRN/FNP-C on 12/23/2020 13:28

- 25 -

**EXHIBIT D**



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution, Williamsburg*

March 1, 2021

MEMORANDUM FOR: INMATE POPULATION

FROM :            Bryan K. Dobbs, Warden
                  FCI Williamsburg

SUBJECT:          Development of Preferred Housing Units

As you all are aware, the First Step Act was passed and the implementation of the various aspects of this law are underway throughout the agency. FSA 0632(d)(3)(C) regarding incentives for prisoners who successfully participate in an evidence-based recidivism reduction program, states in part, "Consideration of transfer to preferred housing units". While the agency continues to make an official determination as to what exactly "evidence-based recidivism reduction programs are", we know that certain programs have long been indicators of prisoner success after release. Unicor and RDAP are such programs. These programs have a long record of recidivism reduction. Work skills developed in Unicor can result in a significant increase in the probability that an inmate will be successful upon their return to the community. Currently, there are no housing units designated as "preferred housing units."

Accordingly, I am developing two housing units which will be designated as preferred housing units, 1BL and 1BU. The Unicor Unit will be considered a preferred housing unit. Inmates assigned to this unit will continue in accordance with established guidelines set forth by policy.  All inmates assigned to work Unicor will be assigned to these two units.

FATA, FARID  48860039

Additionally, inmates must also meet the following criteria for placement in the preferred units:

- Have not been found guilty of a 100 & 200 series conduct violation by the UDC or DHO in the last 12 months.
- Program and Living Skills must be indicated as "Good" by their Unit Team.
- Must not be GED "UNSAT".
- If FRP, must participate in FRP.

Privileges for inmates assigned to the preferred housing units are as follows:

- Total phone minutes will be 300.
- Phone call durations will increase from 15 to 20 minutes.
- **These units will continue to shop on a bi-weekly basis however they will shop first each time. (spending limits will remain the same)**
- Showers in these units will remain open all day.
- These units will have access to the barber shop on the weekends; this schedule will be managed by the Captain.

Due to the current population levels and movement required to create these units, inmates who meet these requirements must be assigned to these units. Inmates who receive incident reports or otherwise fail to meet and/or participate in assigned programming will be removed from the preferred unit. Following a removal, 6 months of applicable positive activity is required to be reconsidered for placement in a preferred unit. Unit managers and the Captain will make determination on all inmate assignments in preferred housing units. Should negative behavior occur, removal of privileges will continue to be at the discretion of the Captain and Unit Mangers. As additional programs are officially recognized and/or additional guidance is received, the eligibility factors listed will be at the discretion of the Captain and Unit Managers.

This transition to the new units and roll out of privileges is scheduled to occur on February 16, 2021. It is important to

FATA, FARID 48860039

note the increased Trulincs and phone privileges will not go
into effect until 24 hours after movement into the unit.

FATA, FARID 48860039

**EXHIBIT E**

```
    WILJA  606.00 *        MALE CUSTODY CLASSIFICATION FORM        *      02-11-2021
PAGE 001 OF 001                                                          15:28:59
                              (A) IDENTIFYING DATA
REG NO..: 48860-039              FORM DATE: 01-06-2021          ORG: WIL
NAME....: FATA, FARID
                                       MGTV: PSF WAV
PUB SFTY: GRT SVRTY,SENT LGTH         MVED: N/A
                              (B) BASE SCORING
DETAINER: (0) NONE              SEVERITY.......: (7) GREATEST
MOS REL.: 371                   CRIM HIST SCORE: (00) 0 POINTS
ESCAPES.: (0) NONE              VIOLENCE.......: (0) NONE
VOL SURR: (0) N/A               AGE CATEGORY...: (0) 55 AND OVER
EDUC LEV: (0) VERFD HS DEGREE/GED   DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS
                              (C) CUSTODY SCORING
TIME SERVED.....: (3) 0-25%     PROG PARTICIPAT: (2) GOOD
LIVING SKILLS...: (2) GOOD      TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE      FAMILY/COMMUN..: (4) GOOD


                     --- LEVEL AND CUSTODY SUMMARY ---
BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL   CUSTODY  CONSIDER
 +7   +19    -3        +4       HIGH       MEDIUM            IN     DECREASE


G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED
```



# Individualized Needs Plan - Program Review   (File copy)

**Dept. of Justice / Federal Bureau of Prisons**
Plan is for inmate: FATA, FARID  48860-039

SEQUENCE: 01848271
Team Date: 10-01-2020



| | |
|---|---|
| Facility: | WIL  WILLIAMSBURG FCI |
| Name: | FATA, FARID |
| Register No.: | 48860-039 |
| Age: | 55 |
| Date of Birth: | 04-09-1965 |
| Proj. Rel. Date: | 12-11-2051 |
| Proj. Rel. Method: | GCT REL |

DNA Status: MIL05699 / 08-28-2013
CIMS Status: YES
CIMS Reconciled: YES

**Contact Information**
Emergency contact #1

*Release Residence : Tel: (248) 703 7635* } for U.S. Probation to inspect.

*Amira Manni*
*37205 Almont Drive West*
*Sterling Heights, MI 48310*

Inmate is subject to 18 U.S.C. 4042(B) Notification:                    **No**

Inmate is subject to 18 U.S.C. 4042(C) Notification and Registration:    **N/A**

## Offense Sentences

| Charge | Terms In Effect |
|---|---|
| 18:1347 HEALTH CARE FRAUD CTS 3SSSS-6SSSS 9SSSS-17SSSS 18:371 CONSPIRACY TO PAY AND RECEIVE KICKBACKS CT20SSSS 18:1956(A)(1)(A)(I) MONEY LAUNDERING CT 22SSSS,23SSSS | 540 MONTHS |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

## Current CMA Assignments

| Assignment | Description | Start |
|---|---|---|
| BIR CERT N | BIRTH CERTIFICATE - NO | 07-28-2018 |
| DEPEND Y | DEPENDENTS UNDER 21 - YES | 07-28-2018 |
| PHOTO ID N | PHOTO ID - NO | 07-28-2018 |
| RPP PART | RELEASE PREP PGM PARTICIPATES | 08-28-2018 |
| SSN CARD N | SOCIAL SECURITY CARD - NO | 07-28-2018 |
| VET P/S N | PARENT/SPOUSE VETERAN - NO | 07-28-2018 |
| VETERAN N | VETERAN - NO | 07-28-2018 |
| V94 COA913 | V94 CURR OTHER ON/AFTER 91394 | 08-28-2015 |
| WA NO HIST | NO WALSH ACT OFFENSE HISTORY | 07-23-2015 |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| WIL | CSD ORD | CSD ORDERLY 830AM-230PM SS | 01-28-2020 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| WIL | ESL HAS | ENGLISH PROFICIENT | 09-03-2015 |
| WIL | GED HAS | COMPLETED GED OR HS DIPLOMA | 09-03-2015 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| WIL | | BEGINNING FRENCH | 01-21-2020 | CURRENT |
| WIL | | SHU NUTRITION | 08-21-2020 | CURRENT |
| WIL | C | INTERMEDIATE PIANO | 01-12-2020 | 03-31-2020 |
| WIL | C | STARTING AND INCORPRATE A BUS | 03-05-2019 | 05-24-2019 |
| WIL | C | BEGINNING FRENCH | 03-05-2019 | 05-24-2019 |
| WIL | C | ADVANCE FRENCH | 11-16-2018 | 02-25-2019 |
| WIL | C | STARTING AND INCORPRATE A BUS | 11-16-2018 | 02-25-2019 |
| WIL | C | ART HISTORY-VARIOUS TOPICS | 12-26-2018 | 12-28-2018 |

- 32 -



**Individualized Needs Plan - Program Review    (File copy)**

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: FATA, FARID   48860-039

SEQUENCE: 01848271

Team Date: 10-01-2020

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| WIL | C | BEGINNING FRENCH | 08-09-2018 | 10-31-2018 |
| WIL | C | HEALTH FAIR-VARIOUS TOPICS | 09-25-2018 | 09-28-2018 |
| WIL | C | STARTING AND INCORPRATE A BUS | 05-09-2018 | 07-27-2018 |
| WIL | C | ADVANCE FRENCH | 05-09-2018 | 07-27-2018 |
| WIL | C | BEGINING FRENCH | 02-01-2018 | 05-11-2018 |
| WIL | C | UNDERSTANDING BASIC LAW | 02-01-2018 | 05-09-2018 |
| WIL | C | INDEPENDENT OWNER TRUCKING | 02-01-2018 | 05-09-2018 |
| WIL | C | HEALTH FAIR-VARIOUS TOPICS | 04-24-2018 | 05-07-2018 |
| WIL | C | CUSTODIAL APPRENTICE | 03-14-2017 | 05-04-2018 |
| WIL | C | INTERMEDIATE SPANISH | 10-24-2017 | 01-19-2018 |
| WIL | C | ADVANCE LAW | 10-24-2017 | 01-12-2018 |
| WIL | C | INTERMEDIATE FRENCH | 10-25-2017 | 01-12-2018 |
| WIL | C | HEALTH FAIR-VARIOUS TOPICS | 09-27-2017 | 10-03-2017 |
| WIL | C | BEGINNING SPANISH | 07-27-2017 | 10-10-2017 |
| WIL | C | BEGINNING FRENCH | 07-27-2017 | 10-10-2017 |
| WIL | C | STARTING AND INCORPRATE A BUS | 04-14-2017 | 06-30-2017 |
| WIL | C | BEGINNING SPANISH | 04-14-2017 | 06-30-2017 |
| WIL | C | ART HISTORY-VARIOUS TOPICS | 05-31-2017 | 06-10-2017 |
| WIL | C | HEALTH FAIR-VARIOUS TOPICS | 04-25-2017 | 05-07-2017 |
| WIL | C | RPP #6 DRUG EDUCATION | 08-22-2016 | 10-21-2016 |
| WIL | C | FCI ORIGAMI LEISURE CLASS | 06-24-2016 | 08-16-2016 |
| WIL | C | TEACH ENGLISH TO SPANISH | 05-18-2016 | 08-12-2016 |
| WIL | C | TYPING I | 05-20-2016 | 08-12-2016 |
| WIL | C | FCI CDL PREP CLASS | 05-17-2016 | 08-05-2016 |
| WIL | C | RPP#1-MEN'S HEALTH CLASS | 03-28-2016 | 06-15-2016 |
| WIL | C | RPP#1-ENDURANCE TRAINING CLASS | 03-28-2016 | 06-15-2016 |
| WIL | C | HEALTH FAIR-VARIOUS TOPICS | 04-27-2016 | 05-17-2016 |
| WIL | C | INVESTING / ACE COURSE | 02-11-2016 | 05-16-2016 |
| WIL | C | JOB FAIR INFORMATIONAL | 03-09-2016 | 05-10-2016 |
| WIL | C | COMPUTER APPLS SKILL IMPROVMEN | 02-18-2016 | 05-10-2016 |
| WIL | C | BEGINNER'S DRUM CLASS | 09-03-2015 | 12-03-2015 |
| WIL | C | REC MUSIC CLASS | 01-13-2016 | 03-28-2016 |
| WIL | C | TYPING I | 12-04-2015 | 02-16-2016 |
| WIL | C | REC MUSIC CLASS | 09-03-2015 | 12-03-2015 |
| WIL | C | BUSINESS MARKETING & ADMIN COM | 10-02-2015 | 02-01-2016 |
| WIL | C | HEALTH FAIR-VARIOUS TOPICS | 10-29-2015 | 10-29-2015 |
| WIL | C | RPP #1 HIV/AIDS AWARENESS | 09-14-2015 | 09-14-2015 |

**Discipline History (Last 6 months)**

| Hearing Date | Prohibited Acts |
|--------------|-----------------|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

**ARS Assignments**

| Facl | Assignment | Reason | Start | Stop |
|------|-----------|--------|-------|------|
| WIL | A-DES | WRIT RETURN | 10-31-2019 | CURRENT |
| WIL | A-DES | TRANSFER RECEIVED | 02-10-2017 | 05-03-2019 |
| WIL | A-DES | OTHER AUTH ABSENCE RETURN | 06-09-2016 | 12-16-2016 |
| WIL | A-DES | OTHER AUTH ABSENCE RETURN | 08-28-2015 | 06-09-2016 |
| WIL | A-DES | US DISTRICT COURT COMMITMENT | 08-28-2015 | 02-10-2016 |

**Current Care Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 10-31-2019 |
| CARE1-MH | CARE1-MENTAL HEALTH | 07-20-2015 |

**Current Medical Duty Status Assignments**

| Assignment | Description | Start |
|------------|-------------|-------|
| LOWER BUNK | LOWER BUNK REQUIRED | 11-22-2019 |



**Individualized Needs Plan - Program Review   (File copy)**

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: FATA, FARID  48860-039

SEQUENCE: 01848271

Team Date: 10-01-2020

| Assignment | Description | Start |
|---|---|---|
| NO PAPER | NO PAPER MEDICAL RECORD | 08-28-2013 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 01-19-2017 |
| YES F/S | CLEARED FOR FOOD SERVICE | 10-31-2019 |

**Current PTP Assignments**

| Assignment | Description | Start |
|---|---|---|
| *NO ASSIGNMENTS* | | |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| ED COMP | DRUG EDUCATION COMPLETE | 10-21-2016 |
| NR WAIT | NRES DRUG TMT WAITING | 06-08-2016 |

**FRP Details**

| Most Recent Payment Plan |
|---|

**FRP Assignment:   PART     FINANC RESP-PARTICIPATES     Start: 03-07-2016**

Inmate Decision: **AGREED      $25.00**          Frequency: **QUARTERLY**

Payments past 6 months:      **$0.00**          Obligation Balance: **$26,480,855.37**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status | | |
|---|---|---|---|---|---|---|---|
| 2 | REST FV | $26,480,880.37 | $26,480,855.37 | IMMEDIATE | AGREED | | |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | | | |
| 1 | ASSMT | $1,600.00 | $1,225.00 | DEFERRED | EXPIRED | | |
| | Adjustments: | Date Added | Facl | Adjust Type | Reason | | Amount |
| | | 06-10-2020 | WIL | PAYMENT | INSIDE PMT | | $25.00 |

**Payment Details**

Trust Fund Deposits - Past 6 months:   $245.20          Payments commensurate ?   N/A

New Payment Plan:        | ** No data ** |

**Progress since last review**

| Inmate Fata has not obtained SS card or Birth Certificate. He has not completed any education classes. |
|---|

**Next Program Review Goals**

Fata will complete the following tasks before his next program review.

-Complete applications to obtain SS Card and Birth Certificate for central file.

-Enroll in a Release Preparation program (RPP) course by next program review

**Long Term Goals**

Fata will save 50% of all deposits for release funds until 12-11-2051.

Inmate Fata will complete four courses in each of the Release Preparation Program (RPP) content areas (#1-Health and Nutrition, RPP #2-Employment, RPP #3-Personal Finance, RPP #4-Release Requirements and Procedures, RPP#5-Information/Community Resources and RPP #6-Personal Growth and Development by 12-11-2051.

**RRC/HC Placement**

No.
Management decision - Will discuss 17-19 months prior to release date, if eligible..

**Comments**

407/408 reviewed and current.
Judicial Recommendations: Yes, RDAP

Defendant be assigned to FCI Milan.

— 34 —

231



**Individualized Needs Plan - Program Review    (File copy)**

SEQUENCE: 01848271

Dept. of Justice / Federal Bureau of Prisons

Team Date: 10-01-2020

Plan is for inmate: FATA, FARID  48860-039

---

Name:  FATA, FARID          DNA Status:  MIL05699 / 08-28-2013
Register No.:  **48860-039**
Age:  55
Date of Birth:  04-09-1965



_____
Inmate   (FATA, FARID. Register No.: 48860-039)

**10-1-2020**
_____
Date

_____
Unit Manager / Chairperson

**10-1-2020**
_____
Date

_____
Case Manager

**10-1-2020**
_____
Date

---

```
    WILHH          *        INMATE EDUCATION DATA      *     03-04-2021
  PAGE 001         *             TRANSCRIPT            *     13:14:21


REGISTER NO: 48860-039      NAME..: FATA              FUNC: PRT
FORMAT.....: TRANSCRIPT     RSP OF: WIL-WILLIAMSBURG FCI


-------------------------- EDUCATION INFORMATION --------------------------
FACL ASSIGNMENT DESCRIPTION                 START DATE/TIME STOP DATE/TIME
WIL  ESL HAS    ENGLISH PROFICIENT          09-03-2015 1052 CURRENT
WIL  GED HAS    COMPLETED GED OR HS DIPLOMA 09-03-2015 1049 CURRENT


-------------------------- EDUCATION COURSES --------------------------
SUB-FACL   DESCRIPTION              START DATE  STOP DATE EVNT AC LV   HRS
WIL        SHU MEN'S HEALTH         01-01-2021 CURRENT
WIL        HEALTH FAIR-VARIOUS TOPICS 11-23-2020 12-18-2020   P  C  P    2
WIL        SHU NUTRITION            08-21-2020 12-18-2020   P  C  P    5
WIL        BEGINNING FRENCH         01-21-2020 10-05-2020   P  C  P   20
WIL        INTERMEDIATE PIANO       01-12-2020 03-31-2020   P  C  P   20
WIL        STARTING AND INCORPRATE A BUS 03-05-2019 05-24-2019   P  C  P   20
WIL        BEGINNING FRENCH         03-05-2019 05-24-2019   P  C  P   20
WIL        ADVANCE FRENCH           11-16-2018 02-25-2019   P  C  P   20
WIL        STARTING AND INCORPRATE A BUS 11-16-2018 02-25-2019   P  C  P   20
WIL        ART HISTORY-VARIOUS TOPICS 12-26-2018 12-28-2018   P  C  P    2
WIL        BEGINNING FRENCH         08-09-2018 10-31-2018   P  C  P   20
WIL        HEALTH FAIR-VARIOUS TOPICS 09-25-2018 09-28-2018   P  C  P    2
WIL        STARTING AND INCORPRATE A BUS 05-09-2018 07-27-2018   P  C  P   20
WIL        ADVANCE FRENCH           05-09-2018 07-27-2018   P  C  P   20
WIL        BEGINING FRENCH          02-01-2018 05-11-2018   P  C  P   20
WIL        UNDERSTANDING BASIC LAW  02-01-2018 05-09-2018   P  C  P   20
WIL        INDEPENDENT OWNER TRUCKING BUS 02-01-2018 05-09-2018   P  C  P   20
WIL        HEALTH FAIR-VARIOUS TOPICS 04-24-2018 05-07-2018   P  C  P    2
WIL        CUSTODIAL APPRENTICE     03-14-2017 05-04-2018   P  C  A 2228
WIL        INTERMEDIATE SPANISH     10-24-2017 01-19-2018   P  C  P   20
WIL        ADVANCE LAW              10-24-2017 01-12-2018   P  C  P   20
WIL        INTERMEDIATE FRENCH      10-25-2017 01-12-2018   P  C  P   20
WIL        HEALTH FAIR-VARIOUS TOPICS 09-27-2017 10-03-2017   P  C  P    2
WIL        BEGINNING SPANISH        07-27-2017 10-10-2017   P  C  P   20
WIL        BEGINING FRENCH          07-27-2017 10-10-2017   P  C  P   20
WIL        STARTING AND INCORPRATE A BUS 04-14-2017 06-30-2017   P  C  P   20
WIL        BEGINNING SPANISH        04-14-2017 06-30-2017   P  C  P   20
WIL        ART HISTORY-VARIOUS TOPICS 05-31-2017 10-10-2017   P  C  P    2
WIL        HEALTH FAIR-VARIOUS TOPICS 04-25-2017 05-07-2017   P  C  P    2
WIL        RPP #6 DRUG EDUCATION    08-22-2016 10-21-2016   P  C  P    1
WIL        FCI ORIGAMI LEISURE CLASS 06-24-2016 08-16-2016   P  C  P   16
WIL        TEACH ENGLISH TO SPANISH 05-18-2016 08-12-2016   P  C  P   20
WIL        TYPING I                 05-20-2016 08-12-2016   P  C  P   40
WIL        FCI CDL PREP CLASS       05-17-2016 08-05-2016   P  C  P   20
WIL        RPP#1-MEN'S HEALTH CLASS 03-28-2016 06-15-2016   P  C  P   10
WIL        RPP#1-ENDURANCE TRAINING CLASS 03-28-2016 06-15-2016   P  C  P   10
WIL        HEALTH FAIR-VARIOUS TOPICS 04-27-2016 05-17-2016   P  C  P    2
WIL        INVESTING / ACE COURSE   02-11-2016 05-16-2016   P  C  P   20
WIL        JOB FAIR INFORMATIONAL   03-09-2016 05-10-2016   P  C  P    2
WIL        COMPUTER APPLS SKILL IMPROVMEN 02-18-2016 05-10-2016   P  C  P   40


G0002      MORE PAGES TO FOLLOW . . .
```

"Vocational" *(handwritten annotation pointing to the CUSTODIAL APPRENTICE row)*

```
     WILHH          *          INMATE EDUCATION DATA          *      03-04-2021
 PAGE 002 OF 002 *               TRANSCRIPT                   *      13:14:21

 REGISTER NO: 48860-039      NAME..: FATA                  FUNC: PRT
 FORMAT.....: TRANSCRIPT      RSP OF: WIL-WILLIAMSBURG FCI
```

```
--------------------------- EDUCATION COURSES ---------------------------
SUB-FACL     DESCRIPTION                    START DATE  STOP DATE EVNT AC LV   HRS
WIL          BEGINNER'S DRUM CLASS          09-03-2015 12-03-2015   P  C  P     10
WIL          REC MUSIC CLASS                01-13-2016 03-28-2016   P  C  P     10
WIL          TYPING I                       12-04-2015 02-16-2016   P  C  P     40
WIL          TEACH ENGLISH TO SPANISH       08-21-2015 02-01-2016   P  C  P     20
WIL          REC MUSIC CLASS                09-03-2015 12-03-2015   P  C  P     10
WIL          BUSINESS MARKETING & ADMIN COM 10-02-2015 02-01-2016   P  C  P     20
WIL          HEALTH FAIR-VARIOUS TOPICS     10-29-2015 10-29-2015   P  C  P      2
WIL          RPP #1 HIV/AIDS AWARENESS      09-14-2015 09-14-2015   P  C  P      1
```

```
G0000        TRANSACTION SUCCESSFULLY COMPLETED
```

TRULINCS  48860039 - FATA, FARID - Unit: WIL-A-B

--------------------------------------------------------------------------------

FROM: Chaplain
TO: 48860039
SUBJECT: RE:***Inmate to Staff Message***
DATE: 02/21/2021 01:57:02 PM

Mr. Fata,

You will have a program completion entry placed in your institutional record.

Blessings,
FCI Williamsburg Chaplaincy Department

The institutional religious activity schedule and calendar of holy days are posted on the electronic message board.

REMINDER:  The purpose of the electronic correspondence system is to submit a request concerning some aspect of religious accommodation.
>>>

To: Chaplain Middleton
Inmate Work Assignment: Unicor

Dear Chaplain,

Just checking whether you provide a "certificate of completion" , for the inmates who completed the THRESHOLD PROGRAM

Thank you so much



# Dimensions of Life

*The Threshold Program*





# Certificate of Appreciation

This certifies that

**Farid Fata**

successfully taught the ACE

## Starting & Incorporating a Business

class at FCI Williamsburg

2017

T. Gordon, Supervisor of Education

L. McClary, ACE Coordinator



Rock of Ages Ministries

Discipleship Institute

Certificate of Completion

Presented on this 8th Day of August, in the year of our Lord 2019 to:

Farid Fata

For having successfully completed with honors the

New Testament Study Course

With a GPA of 3.85

"Study to shew thyself approved unto God, a workman that needeth not to be ashamed,

Rightly dividing the Word of truth"

II Timothy 2:15

Dr. Charly W. Long

Rock of Ages Representative

# The United States Department of Labor

## Office of Apprenticeship

## Certificate of Completion of Apprenticeship

*This is to certify that*

### FARID FATA

*has completed an apprenticeship for the occupation*

### HOUSEKEEPER, COM, RES, IND

*under the sponsorship of*

### FCI Williamsburg

*in accordance with the basic standards of apprenticeship established by the Secretary of Labor*

May 4, 2018

Date Completed



Administrator, Office of Apprenticeship

— 43 —



Farid Fata
# 48860-039
FCI Williamsburg
P.O. Box 340
Salters, SC 29590

CERTIFIED MAIL

7017 1000 0000 8242 3243

Honorable Paul D. Borman
U.S. District Court — Office of the Clerk
Theodore Levin U.S. Court House
231 West Lafayette Blvd — Room 564
Detroit, MI 48226

U.S. MARSHALS

RECEIVED
MAR 29 2021
CLERK'S OFFICE
U.S. DISTRICT COURT

Please!
URGENT!
MAIL (TIME-SENSITIVE)

LEGAL MAIL (Certified Mail)

FCI/SCP WILLIAMSBURG
P O BOX 220
SALTERS, SC 29590

Date: 3-15-21

The enclosed letter was processed through special mail procedures for forwarding to you. The letter was neither opened nor inspected. If the writer raises a problem over which this facility has jurisdiction, you may wish to return the material for further information or clarification. If the writer encloses correspondence for forwarding to another address, return the enclosure to the above address.

Printer

3/15/21